IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| SEAN CLARK, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | Case No. CIV-17-184-RAW |
| ) | |
| VITAL FARMS, INC., a Delaware ) | |
| Corporation, ) | |
| ) | |
| Defendant. ) | |
| ) | |

## REPORT AND RECOMMENDATION

The Plaintiff Sean Clark brought suit upon a written contract in the District Court of Adair County, State of Oklahoma (Case No. 17-CJ-35), against the Defendant Vital Farms, Inc. ("Vital Farms"), seeking damages and judicial declaration that an arbitration clause contained in the contract was unenforceable. Vital Farms removed the case to this Court and filed a Motion to Dismiss or Motion to Stay in Favor of Arbitration and Brief in Support [Docket No. 8], urging an abatement of the proceedings pending arbitration in Texas pursuant to the terms of the agreement. The District Judge referred the motion to the undersigned Magistrate Judge for a report and recommendation pursuant to 28 U.S.C. § 636(b)(1)(B), and a hearing was held on November 27, 2017. After the hearing, Vital Farms was directed to supplement the record with a number of exhibits, which were submitted on December 1, 2017. This spawned several ancillary motions, *i. e.*, a Motion to Strike Exhibits A-C That Are Referenced in the Pastured Egg Producer Agreement, Identified as Defendant's Exhibit 1 at the Evidentiary Hearing Held on September 27,

2017 [Docket No. 50] by the Plaintiff, along with a Motion to Strike Plaintiff's Improper and Unauthorized Supplemental Briefing [Docket No. 53], and a Motion to Strike Plaintiff's Newly Created Evidence and Argument or, in the Alternative, to Allow Supplementation of the Record With New Evidence Produced by the Plaintiff After the Evidentiary Hearing and Brief in Support Thereof [Docket No. 61] by the Defendant (the "Evidentiary Motions"), which the District Judge referred to the undersigned for a final determination pursuant to 28 U.S.C. § 636(b)(1)(A), and the parties finished briefing the issues on February 7, 2018. *See* Docket No. 64. The undersigned Magistrate Judge determines that the Defendant's Evidentiary Motions [Docket Nos. 53 & 61] should be DENIED, and the Plaintiff's Evidentiary Motion should be GRANTED. Furthermore, for the reasons set forth below, the undersigned Magistrate Judge recommends that the Defendant's Motion to Dismiss or Motion to Stay in Favor of Arbitration and Brief in Support [Docket No. 8] be GRANTED by the Court and that this action be STAYED pending arbitration.[1]

## FINDINGS AND ANALYSIS

Mr. Clark is a farmer who entered into a Pastured Egg Producer Agreement (the "Agreement") with Vital Farms on July 8, 2015. *See* Defendant's Evidentiary Hearing Exhibit 1 ("Ex. 1"). As submitted by Vital Farms, the Agreement contains, *inter alia*, a clause requiring arbitration of any disputes between the parties as follows:

---

[1] Although initially seeking either dismissal or stay pending arbitration, Vital Farms now concedes that the preferred relief would be a stay. Consequently, the undersigned Magistrate Judge will consider the Vital Farms' motion as one for a stay pending arbitration and not as one for dismissal.

> Binding Arbitration. All disputes and controversies between the parties relating to the subject matter of this Agreement shall be received by mutually agreed upon third party arbitration in Austin, Texas, in accordance with the rules of the American Arbitration Association. Any matter determined by arbitration as aforesaid shall be final and binding upon all of the parties thereto. In the even that PRODUCER must undertake any collection activities, or that the PRODUCER or OWNER has disputes or controversies, both parties are required to utilize binding arbitration. Any matter determined by arbitration as foresaid shall be final and binding upon all of the parties thereto.

Ex. 1, p. 7, ¶ 6(L).[2] Mr. Clark, on the other hand, contends that the instrument that he signed contained no such arbitration clause, and that Vital Farms added that language after he signed it. Mr. Clark also contends that even if the Agreement *does* contain an arbitration clause, that it is unconscionable on the facts to compel him to arbitrate where he cannot afford it, *i. e.*, in Texas. As discussed below, the undersigned Magistrate Judge finds that the Agreement between the parties *does contain* a binding arbitration clause, that it was not induced by fraud and that it would not be unconscionable to require Mr. Clark to arbitrate in Texas.

---

[2] Mr. Clark objected to admission at the hearing of the Pastured Egg Producer Agreement proffered by Vital Farms for failure to be a true and correct copy of the contract between the parties, noting, *inter alia*, one purported exhibit to the contract that was dated after the date of execution (Exhibit A) and several others that were referenced but missing (Exhibits B, C and D). The undersigned Magistrate Judge took this objection under advisement and ultimately ordered Vital Farms to supplement the record with actual exhibits to the contract after the hearing. But Vital Farms submitted only Exhibits B, C and D, noting that: (i) Exhibit A was already attached to the proffered Pastured Egg Producer Agreement; (ii) Exhibits B and C were copies of those ordinarily produced to farmers upon execution of the contract; and, (iii) a completed Exhibit D as to Mr. Clark could not be located. *See* Docket No. 48. Mr. Clark moved to strike all the contract exhibits and renewed his objection to admission of the Pastured Egg Producer Agreement offered into evidence by Vital Farms. *See* Docket No. 50. As noted above, the Plaintiff's motion to strike should be granted and the contract exhibits stricken, as the undersigned Magistrate Judge is unpersuaded that the contract exhibits actually existed at the time the Pastured Egg Producer Agreement was executed by the Plaintiff (or that they were attached to the Agreement at the time). The undersigned Magistrate Judge nevertheless concludes the Pastured Egg Producer Agreement proffered by the Defendant should be admitted into evidence without the challenged exhibits because they are irrelevant to the issue at hand, *i. e.*, none address the question whether the Pastured Egg Producer Agreement contains an enforceable arbitration clause between the parties.

## 1. The Agreement Executed By The
## Parties Contains A Binding Arbitration Clause

"[A]rbitration is a matter of contract and a party cannot be required to submit to arbitration any dispute which he has not agreed so to submit." *United Steelworkers of America v. Warrior & Gulf Navigation Co.*, 363 U.S. 574, 582 (1960). "It necessarily follows that 'if there was never an agreement to arbitrate, there is no authority to require a party to submit to arbitration.'" *Vernon v. Qwest Communications International, Inc.*, 857 F. Supp. 2d 1135, 1148 (D. Colo. 2012), *quoting National Railroad Passenger Corp. v. Boston & Maine Corp.*, 850 F.2d 756, 761 (D.C. Cir. 1988). As the party seeking to compel arbitration in this case, Vital Farms must prove the existence of a binding arbitration agreement. *See, e. g., Fundamental Administrative Services, LLC v. Patton*, 504 Fed. Appx. 694, 698 (10th Cir. 2012) ("The party attempting to compel arbitration carries the burden of demonstrating a valid arbitration agreement.").

In support of its claim that the Agreement between the parties contained a binding arbitration clause, Vital Farms presented testimony from Russell Diaz-Conseco, President and Chief Operating Officer. He identified the Defendant's Ex. 1, *i. e.*, the above-referenced Agreement containing the arbitration clause, as the instrument he received from Mr. Clark with his signature affixed. He also testified that he participated in the creation of the form of the standard Pastured Egg Producer Agreement and managed the paperwork surrounding these agreements. He indicated that Vital Farms was assisted in the creation of the agreement by counsel in Austin, Texas, and that it was standard to have an arbitration clause in every such agreement. Mr. Diaz-Conseco testified that

although there were different types of the standard agreement, *e. g.*, one for farmers with existing barns vs. one for farmers building new barns, all such contracts contained an arbitration clause. Indeed, Mr. Diaz-Conseco affirmed that Vital Farms had no contracts with farmers that did not contain an arbitration clause. He further indicated that such clauses ordinarily provided for arbitration in Austin, Texas because Vital Farms' main office (as well as its records, executives, and the accounting team) is located there, and that although the location of arbitration had on occasion been the subject of negotiation, the existence of an arbitration clause in an agreement with egg producers had never been.

Mr. Clark agrees that there was a valid contract between the parties, but contends that he signed a different instrument than the one proffered by Vital Farms at the hearing. Specifically, he contends that the first and last pages of the Agreement are authentic, but the remainder (including the arbitration clause) are not, *i. e.*, that the pages containing the arbitration clause were substituted for the original pages at some point after he executed it. Mr. Clark claims (in affidavits and live testimony at the evidentiary hearing) that there were a number of irregularities in the way the Agreement was executed on July 8, 2015, *e. g.*, there was an error on the second page as to pricing (which was corrected before Mr. Clark signed the contract), the contract was to be for "five flocks, or seven years" (though the Agreement reflects "three flocks or five years"), and Mr. Clark does not remember an arbitration clause being part of the contract he signed. Mr. Clark also testified that Vital Farms' representative exerted pressure on him to sign the contract without waiting for his wife to review it and without allowing him to initial each page, refused to allow him to

make a copy of his contract, instead promising to send him a copy, which he did not receive until September 2015 and even only through the intercession of his banker.

  Mr. Clark characterizes his contention that Vital Farms added an arbitration clause after he signed the contract as fraud in the inducement. Such a claim is relevant to the issue of arbitration only if the alleged fraud pertains to the arbitration clause itself, and not to the contract in its entirety. *See, e. g., Prima Paint Corp. v. Flood & Conklin Mfg. Co.*, 388 U.S. 395, 403-404 (1967) ("[I]f the claim is fraud in the inducement of the arbitration clause itself--an issue which goes to the 'making' of the agreement to arbitrate--the federal court may proceed to adjudicate it. But the statutory language does not permit the federal court to consider claims of fraud in the inducement of the contract generally."). *See also Buckeye Check Cashing, Inc. v. Cardegna*, 546 U.S. 440, 449 (2006) ("We reaffirm today that, regardless of whether the challenge is brought in federal or state court, a challenge to the validity of the contract as a whole, and no specifically to the arbitration clause, must go to the arbitrator."). Mr. Clark argues that his fraud claim goes only the issue of arbitration, but the undersigned Magistrate Judge is not convinced; his testimony that he believed all pages but the first and last were "switched out," and that significant terms other than the arbitration clause (*e. g.*, the number of flocks and the duration) were likewise a matter of dispute strongly suggest fraud in the inducement as to the entire contract. Furthermore, a party seeking to avoid an arbitration agreement on the grounds of fraud in the inducement must plead the fraud with particularity, *see, e. g., Echostar Satellite Corp. v. General Elec. Co.*, 797 F. Supp. 855, 857 (D. Colo. 1992) ("A plaintiff attempting to avoid an arbitration clause on the basis of fraud must plead fraud

with the specificity required by Fed. R. Civ. P. 9(b)."), and must prove the fraud by clear and convincing evidence. In this regard, it is significant that the petition filed by Mr. Clark in this case makes no reference whatever to fraud. *See, e. g., Brown v. David Stanley Chevrolet, Inc.*, 2017 WL 5560413, at *7 (W.D. Okla. Nov. 17, 2017) ("Despite Plaintiffs' attempt to challenge the arbitration clause itself, the Court finds there are no allegations in the Petition challenging the validity or enforceability of the arbitration clause itself on the grounds of fraud.").

But in any event, the question whether the agreement between the parties contains an arbitration clause boils to the credibility of the competing testimony presented by the parties at the hearing. In this regard, the undersigned Magistrate Judge simply finds more credible the testimony by Mr. Diaz-Conseco that Vital Farms had no agreements with egg producers that did not include an arbitration clause. Indeed, none of the various exhibits purporting to be such an agreement lacked such a clause, and Mr. Clark wholly failed to produce one at the hearing or otherwise. Furthermore, Mr. Clark never complained about any of the contract irregularities he now asserts until June, 2017 (two years *after* execution of the contract) despite several apparently opportune occasions to raise the issue earlier: (i) in September 2015, upon receiving a copy of the Agreement that he presumably knew was different than what he signed; (ii) by the fall of 2016, when his relationship with Vital Farms had deteriorated over the issue of natural vs. artificial shade; and (iii) in April 2017, when he responded to Vital Farms' demand for arbitration in Texas and filed his petition in this case, in each instance challenging the arbitration clause but not on the grounds that it was not in the contract when he signed it. Under

such circumstances, Mr. Clark's uncorroborated testimony that he signed an egg producer agreement without an arbitration clause is simply not as credible as Mr. Diaz-Conseco's testimony that Vital Farms required such as clause in all its egg producer agreements, and therefore falls far short of the clear and convincing evidence required to prove any fraud in the inducement. The undersigned Magistrate Judge therefore finds that *there is* a binding arbitration agreement between the parties as set forth in the Agreement.[3]

## 2. Requiring the Plaintiff To Submit To Binding Arbitration In Texas Is Not Unconscionable

Mr. Clark also seeks to avoid enforcement of the arbitration clause contained in the Agreement as unconscionable because of his dire financial condition. He urges the Court in the alternative to order that the arbitration be moved to Oklahoma where he can better afford it. The burden of proof in this regard is on Mr. Clark. *See, e. g., Green Tree Financial Corp.-Alabama v. Randolph*, 531 U.S. 79, 92 (2000) ("[W]here, as here, a party seeks to invalidate an arbitration agreement on the ground that arbitration would be prohibitively expensive, that party bears the burden of showing the likelihood of incurring such costs.").

The evidence as to financial hardship is mixed. Mr. Clark submitted a statement of income and expenses to support his claim that he cannot afford to conduct arbitration in Austin, Texas (where the proceedings are pending), and stated he is unable to pay his half of the arbitrator's fee. Vital Farms pointed out that although the assigned arbitrator is

---

[3] The undersigned Magistrate Judge expresses no opinion as to the other contract issues between the parties, *e. g.*, fraud in the inducement of the entire contract, the price term (although that is apparently not in dispute), the number of flocks and the duration of the agreement. These are all issues to be addressed in arbitration.

one of the most expensive, Mr. Clark refused to assist in selecting an arbitrator who might have been less expensive, and that in any event Vital Farms paid $3,250.00 to cover Mr. Clark's half of the deposit. Vital Farms also pointed out that Mr. Clark can mitigate any travel costs through videoconferencing.

Furthermore, the evidence establishes that Mr. Clark's net worth was $907,817.00 in 2015, and although it declined thereafter it was still substantial at $797,171.00 in 2017. Mr. Clark explained that his net worth is illiquid and that monthly expenses far exceed income. Vital Farms countered with evidence that Mr. Clark took a trip to Sea World and a Get Hook'd Charter in 2015, and went on a bear-hunting trip to Idaho with his son that cost an estimated $5,676.50. Vital Farms also noted that Mr. Clark used his Facebook page to post pictures of cattle as pasture ornaments, advertised livestock and poultry for sale and traveled cross-country multiple times to deliver the livestock to buyers. Mr. Clark responded that his finances were better in 2015 than in 2017, that he lost money on the cattle sales, that any "pasture ornaments" are owned subject to a security interest held by Grand Savings Bank, that Vital Farms miscalculated his actual profits on the hens, and that his cross-country travels actually resulted in "very little profit." He added that while he did post a $2,000 deposit for the hunting trip (a graduation present for his son), his wife's grandmother paid the remaining balance due because he could not afford it and the deposit was nonrefundable.

The undersigned Magistrate Judge is not persuaded that the costs of arbitration in Austin, Texas incurred would be so prohibitively expensive as to bar relief. *See, e. g., Lovato v. FastBucks Wage and Benefits, LLC*, 2009 WL 10669474, at *3 (D. N.M. Feb.

25, 2009) ("Plaintiffs have not met their burden of showing that they were likely to incur costs that would be prohibitively expensive."). In any event, it is difficult to imagine that arbitration in Texas would be more expensive than maintaining proceedings in this Court, or even arbitrating here in Oklahoma, given the availability of videoconferencing. The undersigned Magistrate Judge therefore finds that enforcement of the arbitration clause, including the agreed-upon location of Austin, Texas, is not unconscionable, and the Court should stay proceedings herein while the parties arbitrate in that forum.

## CONCLUSION

In summary, the undersigned Magistrate Judge finds that the Defendant's Motion to Strike Plaintiff's Improper and Unauthorized Supplemental Briefing [Docket No. 53], and its Motion to Strike Plaintiff's Newly Created Evidence and Argument or, in the Alternative, to Allow Supplementation of the Record With New Evidence Produced by the Plaintiff After the Evidentiary Hearing and Brief in Support Thereof [Docket No. 61] should be and therefore are hereby DENIED. The undersigned Magistrate Judge also finds that the Plaintiff's Motion to Strike Exhibits A-C That Are Referenced in the Pastured Egg Producer Agreement, Identified as Defendant's Exhibit 1 at the Evidentiary Hearing Held on September 27, 2017 [Docket No. 50] should be and therefore is hereby GRANTED. The undersigned Magistrate Judge further finds that the parties have agreed to binding arbitration of the claims asserted herein by the Plaintiff in Austin, Texas, and that requiring the Plaintiff to submit to such arbitration is not unconscionable, and accordingly RECOMMENDS that Defendant's Motion to Dismiss or Stay in Favor of Arbitration and Brief in Support [Docket No. 8] be GRANTED and that the case be

stayed pending arbitration.  Any objections to this Report and Recommendation must be filed within fourteen days.  *See* 18 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b).

IT IS SO ORDERED this 8th day of February, 2018.

_____
Steven P. Shreder
United States Magistrate Judge
Eastern District of Oklahoma